UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

DR. MERSHAD HAGIGI and WELLNESS
MEDICAL IMAGING P.C.,

                   Plaintiffs,

        v.

ISAK YUKHANANOV, SMARTCAP LLC,
AHMAD MASOUD, BROOKLYN IMAGING
HOLDINGS LLC, and IRCM INC.,

                   Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
23-CV-5549 (MKB)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs Dr. Mershad Hagigi and Wellness Medical Imaging P.C. ("Wellness Imaging")

commenced the above-captioned action on July 21, 2023, against Defendants Smartcap LLC

("Smartcap"), Brooklyn Imaging Holdings LLC ("Brooklyn Imaging"), iRCM, Inc. ("iRCM"),

and Isak Yukhananov and Ahmad Masoud, alleging Defendants violated the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO") and conspired to

violate RICO in violation of 18 U.S.C. § 1962(d), and asserting claims for breach of fiduciary

duty, fraudulent inducement, common-law unjust enrichment, breach of contract, and tortious

interference with contract.  (Compl., Docket Entry No. 1.)  On December 11, 2023, Plaintiffs

filed an Amended Complaint adding claims for violation of RICO pursuant to 18 U.S.C.

§ 1962(b) and for conversion.  (Am. Compl., Docket Entry No. 20.)  Plaintiffs allege that, after

entering into an agreement to open a diagnostic radiology practice pursuant to which Dr. Hagigi

would handle the clinical aspect of the practice and Defendants would handle the nonclinical

aspects, Defendants issued fraudulent communications to third parties and banking institutions in

order to, among other things, receive improper payments from an escrow account established to hold the proceeds of Plaintiffs' medical services.  (Am. Compl. ¶¶ 4–7.)

On February 29, 2024, Defendants moved to dismiss the Complaint, and Plaintiffs opposed the motion.[1]  For the reasons explained below, the Court grants Defendants' motion to dismiss.

## I.  Background

Dr. Hagigi is a licensed physician and an operator and practitioner at Wellness Imaging, a medical corporation specializing in diagnostic radiology.[2]  (Am. Compl. ¶¶ 2, 12.)  Smartcap, owned and operated by Yukhananov, provides financing and practice support to private medical offices.  (Id. ¶¶ 13–14.)  Brooklyn Imaging leases medical equipment and premises to medical offices.  (Id. ¶ 15.)  iRCM, owned and operated by Masoud, is a billing and revenue management company.  (Id. ¶ 16.)

In 2021, Yukhananov and Masoud approached Dr. Hagigi and offered to open and eventually manage a diagnostic radiology medical practice.  (Id. ¶ 27.)  They told Dr. Hagigi that they previously worked with other medical practitioners in need of practice support and financing, including diagnostic radiology practices, and proposed a relationship pursuant to which Dr. Hagigi would manage the clinical aspects of the practice and Defendants, "for a fair fee," would handle the nonclinical aspects.  (Id. ¶¶ 4, 28.)  Yukhananov and Masoud suggested that Dr. Hagigi sublease a medical office space from Brooklyn Imaging.  (Id. ¶ 30.)  In June of

---

[1]  (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 22; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 22-1; Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), Docket Entry No. 23; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 24.)

[2]  The Court assumes the truth of the factual allegations in the Amended Complaint for the purpose of deciding Defendants' motion.

2021, Wellness Imaging entered into a commercial sublease agreement and equipment lease agreement with Brooklyn Imaging for the purpose of leasing the medical office and diagnostic radiology equipment.  (*Id*. ¶¶ 5, 33–34.)  In October of 2021, Wellness Imaging and Smartcap then entered into a financing agreement, assignment agreement, and business associate agreement (the "Financing Agreement") pursuant to which Smartcap agreed to advance certain sums of money to Wellness Imaging for the purpose of operating and providing diagnostic radiology services.[3]  (*Id.* ¶ 36.)  Pursuant to the Financing Agreement, all proceeds of the collections on claims receivable by Wellness Imaging, submitted through iRCM and other entities affiliated with Defendants, were to be deposited into an escrow account, with a portion of such proceeds to be deducted by Smartcap for the purpose of paying outstanding financing obligations owed by Wellness Imaging.  (*Id.* ¶ 40.)

In the summer of 2021, Dr. Hagigi began seeing patients and submitted claims to various payors for the services provided.  (*Id.* ¶ 42.)  Dr. Hagigi alleges that he believed the claims were being submitted with the assistance of companies set up by Defendants, including iRCM.  (*Id.*)  In December of 2021, Wellness Imaging entered into an agreement with a collection attorney to perform legal services to collect reimbursements from insurance carriers for services rendered by Wellness Imaging and Dr. Hagigi, and the attorney's escrow account was to be used as a collection account for those insurance proceeds.  (*Id.* ¶ 46.)  Plaintiffs allege that more than $1,200,000 were paid by insurance carriers for claims for services rendered by Wellness Imaging, but that Defendants "conspired with the collection attorney to divert monies" from the escrow account to themselves without Wellness Imaging's authorization.  (*Id.* ¶¶ 48–49.)

---

[3]  In January of 2022, Smartcap and Wellness Imaging executed a different version of the Financing Agreement, "which was in sum and substance" similar to the October 2021 Financing Agreement.  (Am. Compl. ¶ 31.)

Plaintiffs allege that under the Financing Agreement, Smartcap was required to advance at least $640,975.40[4] to Wellness Imaging, but did not.  (*Id*. ¶¶ 51, 53.)  Instead, Defendants caused the collection attorney to retain Plaintiffs' funds received into the escrow account and caused him to stop collection activities on behalf of Plaintiffs.  (*Id.* ¶ 53.)

Plaintiffs also allege that Yukhananov "hijacked the operation" of the business from Dr. Hagigi and assumed control over its operations, gaining "unrestricted access to all computers and documents" at the office.  (*Id.* ¶ 54.)  They allege that, without authorization from Plaintiffs, Defendants gained access to Wellness Imaging's business bank account and fraudulently issued checks from that account to themselves and affiliated entities in a total amount "believed to exceed $50,000," in some cases forging Dr. Hagigi's signatures on checks.  (*Id.* ¶¶ 56–57.)  Plaintiffs also allege that Defendants represented to JPMorgan Chase, Wellness Imaging's bank, that Yukhananov was the owner of Wellness Imaging in order to gain access to the bank account, and then proceeded to change the online banking username and password for the account to allow him full access to it.  (*Id.* ¶ 58.)

Plaintiffs allege other fraudulent activity by Defendants to gain access and control over Wellness Imaging's funds, including: (1) issuing fraudulent communications to Deluxe, a company that provided services such as issuing e-checks associated with Wellness Imaging's bank account, to gain access to e-checks and other services, (*id.* ¶¶ 59–60); (2) stealing Wellness Imaging's physical checks from payors from the mail and depositing them into accounts other than Wellness Imaging's business bank account, (*id.* ¶ 62); (3) gaining access without

---

[4]  The Court notes that Plaintiffs allege differing amounts that should have been advanced.  Plaintiffs allege that "Smartcap was required to advance to Wellness Imaging the sum of at least $640,975.40," (Am. Comp. ¶ 51), but later allege that Smartcap was obligated to advance $325,470.40, (*id.* ¶ 53).  For purposes of this Memorandum and Order, the Court assumes Plaintiffs allege the sum of $640,975.40.

authorization from Plaintiffs to Wellness Imaging's payroll system and placing several employees of companies affiliated with Defendants on the payroll who were not in fact employed by Wellness Imaging, (*id.* ¶ 63); and (4) retaining Wellness Imaging's funds to pay for alleged services provided by companies associated with Defendants that never issued invoices to Plaintiffs, (*id.* ¶¶ 64–66).

In January of 2022, Dr. Hagigi reverted access to Wellness Imaging's accounts solely to himself and terminated his relationship with Defendants. (*Id*. ¶¶ 61, 69.) Plaintiffs allege that Defendants "perpetrated substantially the same scheme" with another doctor in 2020. (*Id.* ¶ 71.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the

complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556

U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint

are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'"

(quoting *Iqbal*, 556 U.S. at 678)).

> **b.   Plaintiffs do not sufficiently allege a RICO claim under 18 U.S.C. § 1962(c)**

Defendants argue that the Court should dismiss Plaintiffs' section 1962(c) RICO claim

because Plaintiffs fail to (1) adequately plead predicate acts of wire fraud, mail fraud, and bank

fraud, (2) adequately allege continuous racketeering activity, and (3) allege an enterprise that is

separate and distinct from the persons named as defendants in the Complaint.  (Defs.' Mem. 10–

19.)

Plaintiffs argue that they (1) adequately pleaded all three predicates, (2) allege both

closed- and open-ended continuity, and (3) properly allege a RICO enterprise.  (Pls.' Opp'n 9–

17.)

"RICO creates a private cause of action for '[a]ny person injured in his business or

property by reason of a violation of section 1962' of RICO."  *Empire Merchs., LLC v. Reliable

Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (alteration in original) (quoting 18 U.S.C.

§ 1964(c)); *see also Laydon v. Coöperatieve Rabobank U.A.*, 55 F.4th 86, 100 (2d Cir. 2022)

(same); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 21-847, 2022 WL 480475, at *2 (2d Cir.

Feb. 17, 2022) (same).  The statute "imposes liability on individuals working for an 'enterprise'

that commits certain predicate crimes that amount to a 'pattern of racketeering activity.'"  *Reich

v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (quoting 18 U.S.C. §§ 1962, 1964).

To establish a RICO claim, a plaintiff must plead "'(1) conduct, (2) of an enterprise,

(3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a

result of the RICO violation.'" *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106,

119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir.

1999)); *see also Curtis v. Greenberg*, Nos. 22-252, 22-346, 2023 WL 6324324, at *1 (2d Cir.

Sept. 29, 2023) (same); *Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("To state a claim of

a substantive RICO violation under [section] 1962(c), a plaintiff must allege, among other things,

two or more predicate acts 'constituting a pattern' of 'racketeering activity.'" (quoting *Williams*

*v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018))); *Williams*, 889 F.3d at 123–24 ("To

sustain a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant

(2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering

activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an

"enterprise" (7) the activities of which affect interstate or foreign commerce.'" (quoting *Moss v.*

*Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983))). "The Supreme Court has interpreted [the]

phrase ['pattern of racketeering activity'] to require both that the RICO predicates pose a threat

of continuous criminal activity and that they be related to each other." *Id.* (citing *H.J. Inc. v. Nw.*

*Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). In addition, "a plaintiff must establish that the

underlying [section] 1962 RICO violation was 'the proximate cause of his injury.'" *Empire*

*Merchs.*, 902 F.3d at 140 (quoting *UFCW Loc. 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d

Cir. 2010)); *see also Laydon*, 55 F.4th at 100 ("To establish a RICO claim, a plaintiff must show:

(1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and

(3) that the injury was caused by the violation of [section] 1962." (quoting *Cruz v.*

*FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013))); *Com. Cleaning Servs., L.L.C. v. Colin*

*Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001) ("[A] plaintiff must plead (1) the defendant's

violation of [section] 1962, (2) an injury to the plaintiff's business or property, and (3) causation

of the injury by the defendant's violation.").

"[A]llegations of frivolous, fraudulent, or baseless litigation activities — without more — cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018). When a plaintiff alleges fraud as a predicate for a RICO claim, Rule 9(b) of the Federal Rules of Civil Procedure requires that the complaint "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" *Babb v. Capitalsource, Inc.*, 588 F. App'x 66, 68 (2d Cir. 2015) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999))*; see also 4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 537–38 (S.D.N.Y. 2014) (same).

### 1. Predicate acts

Defendants argue that Plaintiffs have failed to adequately allege a pattern of racketeering activity because they have failed to properly allege (1) the predicate acts of wire fraud, mail fraud, and bank fraud, and (2) that the predicate acts amount to continuous racketeering activity. (Defs.' Mem. 10–18.)

Plaintiffs argue that they have adequately alleged a pattern of racketeering activity because they allege (1) all three predicate acts and (2) both closed- and open-ended continuity. (Pls.' Opp'n 9–16.)

To sustain a civil RICO claim, a plaintiff must plausibly allege a pattern of racketeering activity, which consists of (1) at least two predicate acts, "the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity," that (2) "amount to or pose a threat of continued criminal activity." *Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 605 (2d Cir. 2019) (first quoting 18 U.S.C. § 1961(5); and then quoting *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999)); *see also Butcher*, 975 F.3d at 241 ("To state a claim of a substantive RICO violation under [section] 1962(c), a plaintiff must

8

allege, among other things, two or more predicate acts 'constituting a pattern' of 'racketeering activity.'" (quoting *Williams*, 889 F.3d at 124)).

Mail fraud, wire fraud, and bank fraud are all RICO predicate acts. *See, e.g.*, *Bascuñán v. Elsaca*, 927 F.3d 108, 120–21 (2d Cir. 2019) (mail, wire, and bank fraud); *Reich*, 858 F.3d at 59 (wire fraud); *Bank of China v. NBM LLC*, 359 F.3d 171, 178 (2d Cir. 2004) (bank fraud); 18 U.S.C. § 1961(1) (setting forth a list of predicate acts, including mail fraud, wire fraud, and bank fraud). Because allegations of mail, wire, and bank fraud are governed by Rule 9(b) of the Federal Rules of Civil Procedure, they must be pled with particularity. *See Babb*, 588 F. App'x at 68 (discussing pleading requirements under RICO for fraudulent predicate acts); *Curtis v. L. Offs. of David M. Bushman, Esq.*, 443 F. App'x 582, 584 (2d Cir. 2011) (same); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) (same); *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006) (same). "Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.'" *Spool*, 520 F.3d at 185 (alterations in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993)); *see also Purchase Real Est. Grp.*, No. 05-CV-10859, 2010 WL 3377504, at *8 (S.D.N.Y. Aug. 24, 2010) ("Under Rule 9(b), allegations of fraud in the RICO context must be made with particularity and must 'specify the statements [plaintiffs] claim[] were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" (alterations in original) (quoting *Moore*, 189 F.3d at 172–73)); *Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Bristol–Myers Squibb Co.*, 948 F. Supp. 2d 338, 346 (S.D.N.Y. 2013) ("[T]o comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where

9

and when the statements were made, and (4) explain why the statements were fraudulent.'"
(alteration in original) (quoting *Lerner*, 459 F.3d at 290)).  "[W]here multiple defendants are
accused of mail or wire fraud, plaintiffs must plead with particularity as to each defendant . . . ."
*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443–44 (S.D.N.Y. 2004)
(quoting *Allen v. New World Coffee, Inc.*, No. 00-CV-2610, 2001 WL 293683, at *4 (S.D.N.Y.
Mar. 27, 2001)); *see also DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The
requirements of section 1962(c) must be established as to each individual defendant.").  Plaintiffs
need not allege that each defendant itself made a misrepresentation, but rather must allege
sufficient facts showing each defendant's knowing or intentional participation in the alleged
scheme to defraud.  *See, e.g.*, *Paul Hobbs Imps. Inc. v. Verity Wines LLC*, No. 21-CV-10597,
2023 WL 374120, at *4 (S.D.N.Y. Jan. 24, 2023).

### A. Plaintiffs allege the predicate act of wire fraud but do not allege the predicate act of mail fraud

Defendants argue that Plaintiffs have failed to adequately allege any predicate act of wire
fraud or mail fraud for several reasons.  As to wire fraud, Defendants argue first, the Amended
Complaint does not notify each Defendants of the specific fraudulent conduct attributed to them
and fails to satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil
Procedure where the allegations do not assert which of the Defendants is alleged to have
participated in the alleged predicate conduct.  (Defs.' Mem. 12–13.)  Second, Defendants argue
that to the extent Plaintiffs allege that Defendants paid 1099 workers and the expenses of running
the medical practice, and took more than their contractual share from the collection account,
these are contract claims that do not rise to the level of fraud sufficient to establish a predicate
act.  (*Id.* at 13.)  Third, Defendants contend that all of the communications referred to in the
Amended Complaint were between people operating within the borders of New York State and

can be presumed to be intrastate, and therefore cannot support a claim for wire fraud.  (*Id.* at 14.)

As to mail fraud, Defendants argue that Plaintiffs have failed to allege any predicate act of mail fraud for the same reasons they failed to allege wire fraud, and because there are no allegations Defendants used the mail in furtherance of an illegal scheme.  (*Id.*)

Plaintiffs argue, first, that they adequately allege wire fraud because, regardless of whether actual wire transfers are fraudulent or deceptive, Plaintiffs are only required to show that the use of wires furthers the alleged underlying fraudulent or deceptive scheme.  (Pls.' Opp'n 10–11.)  Second, Plaintiffs contend that they allege "at least seven categories of communications" made by mail or wire in furtherance of the alleged scheme, and that the Amended Complaint alleges when and to whom the allegations were made, and scienter.  (*Id.* at 12.)  Third, Plaintiffs argue that there are numerous allegations in the Amended Complaint of the interstate use of wires, including, among other things, the fraudulent access of Dr. Hagigi's Wellness Imaging account and internet communications between Defendants and Deluxe to gain access to e-check services associated with Wellness Imaging's account.  (*Id.* at 9–10.)  Finally, Plaintiffs argue that they adequately allege mail fraud for the same reasons they allege wire fraud, and that there are numerous allegations in the Amended Complaint of the interstate use of the mails.  (*Id.* at 10–12.)

An individual commits wire fraud when "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," they "transmit[] or cause[] to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice."  18 U.S.C. § 1343; *see also United States v. Napout*, 963 F.3d 163, 178 (2d Cir. 2020) (same).

"There are three 'essential elements' to mail or wire fraud: '(1) a scheme to defraud, (2) money

11

or property as the object of the scheme, and (3) use of the mails or wires to further the scheme.'" *Bascuñán*, 927 F.3d at 122 (emphasis omitted) (quoting *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017)); *see also Gov. Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at *7 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) ("Pleading mail fraud requires: (1) the existence of a scheme to defraud; (2) the use of United States mails . . . to further that scheme; and (3) evidence that defendants did so with a specific intent to defraud.").  "[T]he mailed or wired communication need not itself be fraudulent," but "it must . . . be made in furtherance of the fraudulent scheme." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 488 (2d Cir. 2014); *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (same).  "Because the mail fraud and the wire fraud statutes use the same relevant language, [courts] analyze them the same way." *Bascuñán*, 927 F.3d at 121 (quoting *Weaver*, 860 F.3d at 94).

### (1)  Wire fraud

In the Amended Complaint, Plaintiffs allege that Defendants used the wire systems to knowingly transmit correspondence incorporating false and misleading statements regarding the ownership of Wellness Imaging, monies billed and collected on behalf of Plaintiffs, employees employed by Plaintiffs and their salaries, and services purportedly rendered by Defendants on behalf of Plaintiffs, as well as to fraudulently transfer funds to the alleged RICO enterprise that should have instead been transferred to Plaintiffs.  (Am. Compl. ¶ 101.)  Plaintiffs identified several examples of the allegedly fraudulent actions taken in this scheme, including (1) Yukhananov and Masoud's change of the online username and password for Wellness Imaging's bank account to allow Yukhananov full access to the account, (*id.* ¶ 58), (2) Yukhananov and Masoud gaining access in August of 2021 to Wellness Imaging's account

12

with Deluxe, including access to Wellness Imaging's e-checks and other services offered by Deluxe, (*id.* ¶¶ 59–60), and (3) Yukhananov, Masoud, Brooklyn Imaging, and Smartcap "gain[ing] access to" Wellness Imaging's payroll system, indicating online access of the account, and placing fraudulent employees in the system without Plaintiffs' knowledge or consent, paying them in late December of 2021 and early January of 2022, (*id.* ¶ 63).

Plaintiffs have thus adequately pleaded that Defendants participated in a scheme to defraud Plaintiffs, with money as the object of the scheme, and that Defendants used wires at least three times to do so, namely, when they accessed Wellness Imaging's bank account and changed the online username and password to allow them access, when they accessed Wellness Imaging's e-checks and other services associated with its Deluxe account, and when they allegedly fraudulently gained access to and placed individuals on Wellness Imaging's payroll system who were not actually employees.  (*Id.* ¶¶ 58–60, 63.)  Plaintiffs have also met the heightened Rule 9(b) pleading standard, because they have specified the alleged fraudulent statements, identified Yukhananov and Masoud as the individuals making the fraudulent representations in each instance, established the approximate time the statements and fraudulent transfers took place, and explained why they were fraudulent.  *See Spool*, 520 F.3d at 185; *see also De Sole v. Knoedler Gallery, LLC*, 974 F. Supp. 2d 274, 307–08 (S.D.N.Y. 2013) (concluding the plaintiff had adequately pleaded wire fraud as a predicate act when it noted the dates, and in one case just the month and year, of numerous money transfers and other communications that the defendants either made themselves or caused to be made).[5]

---

[5]  Defendants also argue in their moving papers that Plaintiffs do not sufficiently allege that Defendants used interstate wires, which is required to properly allege wire fraud.  (Defs.' Mem. 14.)  Plaintiffs allege, however, that the internet was used in at least three instances to further the wire fraud scheme, and use of the internet is generally sufficient to establish interstate wire usage for the purpose of wire fraud.  *See, e.g.*, *Williams v. Affinion Grp., LLC*, 889 F.3d

Plaintiffs have therefore adequately alleged the predicate act of wire fraud.

### (2)  Mail fraud

Plaintiffs do not adequately allege that Defendants participated in mail fraud.  The only allegation Plaintiffs make that includes the use of the mails is their allegation that "Defendants . . . stole from Wellness Imaging's mail physical checks that pay[o]rs issued to Wellness Imaging and deposited them into accounts other than Wellness Imaging's account at JPMorgan Chase." (Am. Compl. ¶ 62.)  This allegation does not indicate which of Defendants allegedly stole the checks, or when or where this occurred, and therefore does not meet the pleading requirements of Rule 9(b).  *See, e.g.*, *Spool*, 520 F.3d at 185 ("Allegations of predicate mail . . . fraud acts 'should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.'" (alterations in original) (quoting *Mills*, 12 F.3d at 1176)); *U.S. Fire Ins.*, 303 F. Supp. 2d at 445 (dismissing the plaintiff's mail fraud allegations as to certain defendants because, in part, the plaintiff did not allege when the relevant documents were mailed to the plaintiff or that any of the alleged communications had come or contained representations from those defendants).

---

116, 124 (2d Cir. 2018) (noting that the complaint alleged acts of mail and wire fraud including "use of the internet . . . to initiate the scheme through post-transaction marketing and datapass," but concluding the complaint did not adequately plead an underlying scheme to defraud sufficient to support a mail or wire fraud claim); *Alkhatib v. N.Y. Motor Grp. LLC*, No. 13-CV-2337, 2015 WL 3507340, at *13 (E.D.N.Y. June 3, 2015) (noting that although allegations of wire transfers between two New York-based banks did not plead interstate use of the wires, the use of the internet to advertise did, because "[t]he use of advertising on the Internet in furtherance of an alleged fraud satisfies the interstate wire requirement of [section] 1343"), *report and recommendation adopted*, 2016 WL 5660372 (E.D.N.Y. Sept. 29, 2016); *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 539 (S.D.N.Y. 2014) (concluding the plaintiffs had sufficiently alleged wire fraud where, among other things, they alleged that the defendants "personally made misrepresentations . . . over telephone, emails, and through the internet"); *DNJ Logistic Grp., Inc. v. DHL Express (USA), Inc.*, No. 08-CV-2789, 2010 WL 625364, at *6 n.4 (E.D.N.Y. Feb. 19, 2010) ("[R]ecent cases appear to treat any use of the internet as sufficiently interstate in nature." (collecting cases)).

Plaintiffs have therefore not adequately alleged the predicate act of mail fraud.

### B. Plaintiffs allege multiple predicate acts of bank fraud

Defendants argue that Plaintiffs have failed to allege any predicate act of bank fraud because (1) Plaintiffs allege that they expected certain Defendants to in effect run the nonclinical aspects of the practice for a fee, and (2) Plaintiffs only allege examples of payments made for legitimate business expenses.  (Defs.' Mem. 15.)

Plaintiffs argue that they have sufficiently alleged predicate acts based on the bank fraud statute because they allege that Yukhananov and Masoud specifically impersonated Dr. Hagigi and fraudulently represented to JPMorgan Chase that Yukhananov was the owner of Wellness Imaging to induce the bank to provide him access to the company's account.  (Pls.' Opp'n 13.) Plaintiffs also contend that the fact that the alleged payments were not made directly to Yukhananov or Masoud is not material to whether bank fraud has been adequately alleged.  (*Id.*)

The bank fraud statute "criminalizes schemes to defraud, or schemes to obtain the money of, a 'financial institution.'"[6]  *United States v. Bouchard*, 828 F.3d 116, 123 (2d Cir. 2016); *see also Bascuñán*, 927 F.3d at 124 ("As the text of the bank fraud statute makes clear, the conduct it proscribes is knowingly executing a scheme to (1) defraud a financial institution or (2) fraudulently obtain assets owned by or under the custody of a financial institution."); *United States v. Scott*, No. 17-CR-630, 2023 WL 6064329, at *7 (S.D.N.Y. Sept. 14, 2023) ("A

---

[6]  The bank fraud statute provides:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice — (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344.

defendant commits bank fraud when he 'knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false o[r] fraudulent pretenses, representations, or promises.'" (quoting 18 U.S.C. § 1344)).  "The well established elements of the crime of bank fraud are that the defendant (1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss." *United States v. Norris*, 513 F. App'x 57, 59 (2d Cir. 2013) (quoting *United States v. Barrett*, 178 F.3d 643, 647–48 (2d Cir. 1999)); *see also United States v. Johnson*, 553 F. App'x 78, 79 (2d Cir. 2014) ("The elements of the crime of bank fraud are that the defendant (1) engaged in a 'course of conduct designed to deceive a federally chartered or insured financial institution into releasing property,' and (2) possessed an intent to 'victimize the institution by exposing it to actual or potential loss.'" (quoting *United States v. Rodriguez*, 140 F.3d 163, 167–68 (2d Cir. 1998))).  The first prong requires a showing that "the defendant in question engaged in a deceptive course of conduct by making material misrepresentations." *United States v. Calderon*, 944 F.3d 72, 85 (2d Cir. 2019) (emphasis omitted) (quoting *Neder v. United States*, 527 U.S. 1, 4 (1999)); *see also United States v. Wider*, 184 F. Supp. 3d 10, 16 (E.D.N.Y. 2016) (quoting *United States v. Rigas*, 490 F.3d 208, 231 (2d Cir. 2007), for the same).  Although the second prong requires a showing that the defendant "possessed an intent to victimize the institution by exposing it to actual or potential loss," *Norris*, 513 F. App'x at 59 (quoting *Barrett*, 178 F.3d at 648), the Supreme Court has explained that the statute "demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss" and does not require proof of "more than [the defendant's] simple knowledge that

16

he would likely harm [a] bank's property interest." *Shaw v. United States*, 580 U.S. 63, 67, 69 (2016) (emphasis omitted).

Plaintiffs allege that (1) Yukhananov and Masoud made fraudulent representations to JPMorgan Chase in August of 2021 that Yukhananov was the owner of Wellness Imaging for the purpose of gaining access to Wellness Imaging's bank accounts, and then changed the username and password to allow Yukhananov full access to the account, (*id.* ¶ 58), (2) Defendants issued numerous checks on specific dates drawn against Wellness Imaging's bank account, despite the fact that Defendants were not supposed to have access to the account, and in some cases forged Dr. Hagigi's signature to issue the checks, (*id.* ¶¶ 55–57), and (3) Yukhananov and Masoud made false representations to Deluxe in August of 2021 that Yukhananov and Masoud were the owners of Wellness Imaging and had full authority to perform certain transactions involving Wellness Imaging's bank account, (*id.* ¶¶ 59–60).  Plaintiffs have therefore adequately alleged that Defendants intended to obtain money controlled by JPMorgan Chase, and did so based on Yukhananov and Masoud's false representations that Yukhananov and Masoud, or Yukhananov alone, were the owners of Wellness Imaging.  *See, e.g.*, *Crawford & Sons, Ltd. Profit Sharing Plan v. Besser*, 216 F.R.D. 228, 235–36 (E.D.N.Y. 2003) (concluding the plaintiff had sufficiently alleged bank fraud as a RICO predicate as to certain defendants when the amended complaint alleged, among other things, that those defendants obtained loan proceeds from banks for non-existent leases and forged lessees' signatures).

### 2. Continuity

Defendants argue that Plaintiffs have failed to properly allege closed-ended or open-ended continuity sufficient to sustain their RICO claim.  (Defs.' Mem. 15–18.)  First, Defendants contend that when establishing the relevant time period for purposes of closed-ended continuity, only the time during which Defendants committed the alleged predicate acts is considered.  (*Id.*

at 16.)  Second, Defendants argue that the alleged activity began at the earliest in June of 2021, when Plaintiffs leased the office space and MRI equipment from Brooklyn Imaging, but that those acts cannot be used to calculate the applicable time period because the acts of leasing space and equipment in itself do not constitute predicate acts.  (*Id.*)  Thus, Defendants argue that the earliest specific transaction that could make up a predicate act was in August of 2021, and Dr. Hagigi walked away from the practice on January 31, 2022, which leaves a period of at most seven months, falling short of the two-year minimum adopted by the Second Circuit as a guideline.  (*Id.* at 16–17.)  Third, Defendants argue that Plaintiffs have failed to allege open-ended continuity because Plaintiffs have shown no past criminal conduct such that there would be a threat of future illegal conduct beyond the generalized allegation that Defendants continue to run a criminal enterprise, based solely on an allegedly similar dispute with a different doctor in 2020.  (*Id.* at 17–18.)

Plaintiffs argue that they have sufficiently alleged both closed- and open-ended continuity.  (Pls.' Opp'n 14–17.)  First, Plaintiffs argue that they have alleged closed-ended continuity because the Second Circuit's two-year reference point is not a bright-line requirement, but rather should be considered along with other relevant factors such as "the number and variety of predicate acts, the number of participants and victims and the presence of separate schemes." (*Id.* at 16 (quoting *Cofacrèdit*, 187 F.3d at 242).)  Second, Plaintiffs argue that Defendants' predicate acts spanned a substantial period of time because (1) the Amended Complaint alleges that the first predicate acts of mail and wire fraud occurred when Defendants made false and fraudulent representations to Dr. Hagigi in early 2021, or even earlier, when the object of Defendants' conspiracy was a different doctor in 2020, and (2) Defendants continued to make false statements as late as June 6, 2023, when they falsely alleged in the New Jersey State Action that an entity affiliated with Defendants had issued invoices to Plaintiffs.  (*Id.* at 16–17.)  Third,

18

Plaintiffs argue that they have sufficiently alleged open-ended continuity by alleging (1) that each of the relevant Defendants engaged in predicate acts as part of the Defendants' "regular way" of conducting business, namely that the enterprise was formed and exists for the purpose of depriving physicians of funds by fraudulent means, and (2) there is a threat of continuing criminal activity where Smartcap, Brooklyn Imaging, and iRCM exist to this day and continue to solicit physicians such as Dr. Hagigi for the purpose of perpetrating the same or a similar scheme upon them, and but for Dr. Hagigi's termination of the relationship, the scheme would have continued unabated until this day.  (*Id.* at 15–16.)

To sustain a civil RICO claim, a plaintiff must plausibly allege that the predicate acts "amount to or pose a threat of continued criminal activity."  *AmBase Corp. v. 111 W. 57th Sponsor LLC*, 785 F. App'x 886, 888 (2d Cir. 2019) (quoting *H.J.*, 492 U.S. at 239).  "Such continuity can be closed-ended or open-ended."  *Id.* (quoting *Reich*, 858 F.3d at 60).  "Closed-ended continuity refers to criminal activity that stretches over a substantial period of time, generally at least two years, regardless of whether it will continue into the future.  Open-ended continuity, on the other hand, refers to criminal activity 'that by its nature projects into the future with a threat of repetition.'"  *Id.* (quoting *Reich*, 858 F.3d at 60).

### A.   Plaintiffs have not alleged closed-ended continuity

"To satisfy closed-ended continuity, the plaintiff must prove 'a series of related predicates extending over a substantial period of time.'"  *DeFalco*, 244 F.3d at 321 (quoting *H.J.*, 492 U.S. at 242); *see also Spool*, 520 F.3d at 183 (noting that a closed-ended pattern involves "a series of related predicate acts extending over a substantial period of time").  "In a closed-ended continuity case, predicate acts extending over a few weeks or months do not satisfy the continuity requirement," but acts that "took place over at least two years" may sufficiently satisfy the threshold requirement for closed-ended continuity.  *Lutin v. N.J. Steel Corp.*, 122 F.3d

19

1056, 1997 WL 447005, at *8 (2d Cir. 1997) (unpublished table decision); *W & D Imps., Inc. v. Lia*, 563 F. App'x 19, 24 (2d Cir. 2014) (noting that, for purposes of closed-ended continuity, "a 'substantial period of time' is at least two years" (quoting *DeFalco*, 244 F.3d at 321)); *United States v. Cain*, 671 F.3d 271, 288 (2d Cir. 2012) (noting that "more than two years . . . is a sufficient period to support a finding of closed-ended continuity"); *Spool*, 520 F.3d at 184 (noting that two years is not "a bright-line requirement," but emphasizing that "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy'" (alteration in original) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 468 (2d Cir. 1995))); *MAVL Cap., Inc. v. Marine Transp. Logistics, Inc.*, 130 F. Supp. 3d 726, 732 (E.D.N.Y. 2015) ("[T]he Second Circuit 'has never held a period of less than two years to constitute a "substantial period of time."'" (quoting *DeFalco*, 244 F.3d at 321)).

However, "while two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) (emphasis omitted); *see also MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022) (same); *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 412 (S.D.N.Y. 2013) (same). In addition to considering the length of time over which the pattern is alleged to have occurred, a court also weighs "'a variety of non-dispositive factors,' including 'the number and variety of acts, the number of participants, the number of victims, and the presence of separate schemes.'" *Dolan v. Fairbanks Cap. Corp.*, 930 F. Supp. 2d 396, 410 (E.D.N.Y. 2013) (quoting *GICC Cap. Corp.*, 67 F.3d at 467); *see also Marini v. Adamo*, 812 F. Supp. 2d 243, 262 (E.D.N.Y. 2011)

20

("Furthermore '[w]hile closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the "number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes" as relevant when determining whether closed ended continuity exists.'" (alteration in original) (quoting *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006))).

Plaintiffs have not adequately alleged closed-ended continuity.  In the Complaint, Plaintiffs allege the first predicate act of wire fraud or bank fraud, namely Yukhananov and Masoud falsely representing to JPMorgan Chase that Yukhananov was the owner of Wellness Imaging, took place in August of 2021.[7]  (Am. Compl. ¶ 58.)  Plaintiffs also allege that they terminated their relationship with Defendants on January 31, 2022, (*id.* ¶ 69), and the date of the last fraudulent check Plaintiffs allege Defendants sent is March 22, 2022, (*id.* ¶ 57).  This seven-month period falls well short of the two-year guideline for a substantial period of time.  *See, e.g.*, *MAVL Cap.*, 130 F. Supp. 3d at 732 ("[T]he Second Circuit 'has never held a period of less than two years to constitute "a substantial period of time."'" (quoting *DeFalco*, 244 F.3d at 321)); *see also MinedMap*, 2022 WL 570082, at *2 (noting that there was no closed-ended continuity alleged where the "defendants' alleged RICO predicate acts span[ned] at most a series of months, not years," "[a]t most, there [was] one scheme" arising out of a single business relationship and contract, and that "[s]uch a scheme can hardly be considered a large-scale fraud

---

[7]  Even assuming, as Plaintiffs assert, the wire and bank fraud schemes were initiated when Defendants approached Dr. Hagigi to enter into a partnership, Plaintiffs allege that this happened in "early 2021," approximately one year before Plaintiffs terminated their relationship with Defendants.  (Am. Compl. ¶¶ 27, 29.)

as generally seen in RICO cases"). Plaintiffs have thus not alleged closed-ended continuity sufficient to sustain a civil RICO claim.[8]

### B.   Plaintiffs have not alleged open-ended continuity

An open-ended pattern of racketeering activity "poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183; *see also Reich*, 858 F.3d at 60 ("[C]riminal activity 'that by its nature projects into the future with a threat of repetition' possesses open-ended continuity, and that can be established in several ways." (quoting *H.J.*, 492 U.S. at 241)). "This threat is generally presumed when the enterprise's business is primarily or inherently unlawful." *Spool*, 520 F.3d at 185; *see also Reich*, 858 F.3d at 60 ("When the business of an enterprise is primarily unlawful, the continuity of the enterprise itself projects criminal activity into the future."); *W & D Imps.*, 2013 WL 1750892, at *7 (quoting *Spool*, 520 F.3d at 185); *Dolan*, 930 F. Supp. 2d at 409 (same). "When

---

[8]  Plaintiffs also argue that the Court should consider (1) the previous scheme Plaintiffs allege took place in 2020 with a separate doctor, and (2) the actions taken in pursuit of Defendants' state law claim for the alleged outstanding invoices from Marketing Bull Group LLC, in June of 2023, as predicate acts for purposes of determining whether closed-ended continuity is met. (Pls.' Opp'n 17.) The Court does not consider the alleged previous scheme for purposes of closed-ended continuity, because Plaintiffs do not adequately allege that this previous scheme was a predicate act. Plaintiffs allege only that "[u]pon information and belief, Defendants . . . perpetrated substantially the same scheme with Dr. Oded Greenberg, M.D.," and that this fraud "took place in 2020." (Am. Compl. ¶ 71.) These allegations do not plead with requisite particularity the facts necessary to show that this alleged scheme constituted wire, mail, or bank fraud as a predicate act. *See, e.g.*, *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008) ("Allegations of predicate mail and wire fraud acts 'should state the contents of the communications, who was involved, [and] where and when they took place, and [should] explain why they were fraudulent.'" (alterations in original) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993))). The Court also does not consider the state law action as a predicate act, because the use of mail or wire to conduct allegedly fraudulent litigation activities cannot be used as predicate racketeering acts to sustain a civil RICO claim. *See, e.g.*, *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) ("[W]here . . . a plaintiff alleges that a defendant engaged in a single frivolous, fraudulent, or baseless lawsuit, such litigation activity alone cannot constitute a viable RICO predicate act."); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 69–72 (E.D.N.Y. 2020).

'the enterprise primarily conducts a legitimate business,' however, no presumption of a continued threat arises." *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit*, 187 F.3d at 243); *see also Secure Source Claims Co. v. Miller*, No. 22-CV-9764, 2024 WL 1342804, at *5 (S.D.N.Y. Mar. 29, 2024) ("Examples of . . . a threat of continuing criminal activity include situations where: (1) the predicate acts are 'inherently unlawful' such that they necessarily involve a distinct threat of continued criminal activity (*e.g.*, murder or obstruction of justice); (2) the predicate acts were part of defendants' 'regular way' of doing business; or (3) the predicate acts can be attributed to a defendant operating as part of a 'long-term association that exists for criminal purposes.'" (quoting *Paul Hobbs Imps.*, 2023 WL 374120, at *11–12)); *W & D Imps.*, 2013 WL 1750892, at *7 (discussing legitimate businesses). "In such cases, 'there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity.'" *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit*, 187 F.3d at 243); *see also Reich*, 858 F.3d at 60 ("[C]riminal activity is continuous when 'the predicate acts were the regular way of operating that business,' even if the business itself is primarily lawful." (quoting *Cofacrèdit*, 187 F.3d at 243)); *Dolan*, 930 F. Supp. 2d at 409. When a scheme is "inherently terminable," open-ended continuity does not exist. *MinedMap*, 2022 WL 570082, at *2 (quoting *GICC Cap. Corp.*, 67 F.3d at 466).

Plaintiffs have not adequately pleaded open-ended continuity. First, although Plaintiffs allege that the "objective of [Defendants'] enterprise is to steal hard-earned money from physicians by hijacking reimbursements due to physicians for services rendered by them, physicians' business checking accounts, and other aspects of medical practices," (Am. Compl. ¶ 6), Plaintiffs also allege the legitimate businesses engaged in by Defendants, (*see, e.g.*, *id.* ¶ 13 (stating that Smartcap "is engaged in the business of . . . providing business finance and practice

support to private practice medical offices"), ¶ 15 (stating that Brooklyn Imaging "is engaged in the business of . . . leasing medical equipment and premises for medical offices"), ¶ 16 (stating that iRCM is "a billing and revenue management company"), ¶¶ 14, 17 (stating Yukhananov and Masoud are "investor[s] and business m[en]")).  Defendants' business of consulting and investing in medical business is not inherently unlawful.  *See, e.g.*, *JGIAP RH 160 LLC v. CRI Holding Corp.*, No. 21-CV-2489, 2023 WL 5979125, at *12 (E.D.N.Y. Aug. 16, 2023) ("Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity." (quoting *Grace Int'l Assembly of God v. Festa*, No. 17-CV-7090, 2019 WL 1369000, at *8 (E.D.N.Y. Mar. 26, 2019), *aff'd*, 797 F. App'x 603)).  Plaintiffs have therefore failed to allege "evidence from which it may be inferred that the predicate acts were the regular way of operating that business," *Spool*, 520 F.3d at 185 (quoting *Cofacrèdit*, 187 F.3d at 243), outside of their conclusory allegation that Defendants "perpetrated substantially the same scheme" on another doctor, (Am. Compl. ¶ 71).  *See also Reich*, 858 F.3d at 60 (concluding the plaintiff had not alleged open-ended continuity because "[e]ven if [the defendant] pays bribes, it is primarily in the energy business" and was "not a narcotics ring or an organized crime family"); *JGIAP RH 160*, at *12 ("Plaintiff's conclusory allegation that the fraudulent scheme was defendants' regular way of conducting business is insufficient.").

Second, the scheme alleged by Plaintiffs is "inherently terminable." *MinedMap*, 2022 WL 570082, at *2 (quoting *GICC Cap. Corp.*, 67 F.3d at 466).  Plaintiffs allege that their relationship with Defendants terminated on January 31, 2022, and by January of 2022, Dr. Hagigi had reverted access to Wellness Imaging's bank account to himself.  (Am. Compl. ¶¶ 61, 69.)  Once the business relationship terminated, and Defendants no longer had access to Plaintiffs' funds, the scheme could not continue, and therefore Plaintiffs have not alleged a threat

24

of continuing criminal activity.[9]  *See, e.g.*, *MinedMap*, 2022 WL 570082, at *2 (concluding that the plaintiff had not alleged open-ended continuity where "the heart of the alleged scheme [was] that [a defendant] overstated his company's ability to host [the plaintiff's product], that he refused to return [the product] or deposits to [the plaintiff], and that he and the other defendants [were] misappropriating [the plaintiff's] property," because it was "not a fraud scheme that [could] continue into the future, as it [would] inherently cease once [the defendant] or other defendants run out of [the plaintiff's] property to sell or the funds from [the plaintiff's] deposit dry up"); *JGIAP RH 160*, 2023 WL 5979125, at *13 (concluding a scheme was inherently terminable where it involved a distinct, finite construction project, and "the scheme would have ended when the available funds were depleted").

Plaintiffs have failed to establish either closed- or open-ended continuity, and have therefore not adequately alleged a "pattern of racketeering" in order to sustain a RICO claim. The Court therefore grants Defendants' motion to dismiss Plaintiffs' section 1962(c) RICO claim.[10]

### c.   Plaintiffs do not sufficiently allege a RICO claim under 18 U.S.C. § 1962(b)

Defendants argue that Plaintiffs have failed to adequately state a claim under 18 U.S.C. § 1962(b) because Plaintiffs have failed to allege an "acquisition or maintenance" injury separate from the injury suffered as a result of the alleged predicate act of racketeering.  (Defs.' Mem. 20.)  Defendants also argue that this claim must be dismissed because Plaintiffs have failed to

---

[9]  Plaintiffs do allege that two checks dated March 22, 2022, were issued, but do not specify whether the dates represented the date the checks were written or the date the funds issued from Wellness Imaging's account.  (Am. Compl. ¶ 57.)  Regardless, Plaintiffs do not allege Defendants issued any checks after that date.

[10]  Because Plaintiffs do not allege a pattern of racketeering, the Court declines to address whether Plaintiffs adequately pleaded a RICO enterprise.

adequately plead commission of any requisite predicate acts or that Defendants engaged in a pattern of racketeering.  (*Id.* at 2.)

Plaintiffs argue that they have adequately stated a claim because they have alleged that Defendants (1) through their influence of the collection attorney took over the financial aspect of operating the medical practice and stopped collection activities on behalf of Plaintiffs, (2) "hijacked" the operational aspect of Dr. Hagigi's practice by claiming Yukhananov was the manager of the practice when he was not and took actions such as issuing checks and putting individuals on payroll without Dr. Hagigi's authorization, and (3) "forced Dr. Hagigi to disassociate" from his practice.  (Pls.' Opp'n 19–20.)

Under 18 U.S.C. § 1962(b), it is unlawful for a person, "through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." *See also D'Addario v. D'Addario*, 901 F.3d 80, 97 (2d Cir. 2018) (same).  "Thus,'[u]nder any prong of [section] 1962, a plaintiff in a civil RICO suit must establish a "pattern of racketeering activity."'"  *Spool*, 520 F.3d at 183 (first alteration in original) (quoting *GICC Cap. Corp.*, 67 F.3d at 465); *see also Cayuga Nation ex rel. Cayuga Nation Council v. Parker*, No. 22-CV-128, 2022 WL 3347327, at *7 (N.D.N.Y. Aug. 12, 2022) (same).  In addition, a plaintiff who brings a claim under section 1962(b) must also "demonstrate an injury arising from the defendants' acquisition of an interest in, or maintenance or control over, an alleged enterprise," and "those damages must be different from the damages that flow from the predicate acts themselves." *D'Addario*, 901 F.3d at 97–98; *see also LGN Int'l, LLC v. Hylan Asset Mgmt. LLC*, No. 21-CV-940S, 2023 WL 3570444, at *6 (W.D.N.Y. May 19, 2023) ("[A] plaintiff cannot recover under [section] 1962(b) unless he alleges a distinct injury caused not by predicate acts but by the

defendant's acquisition or maintenance of an interest in or control of an enterprise." (quoting *Dornberger v. Metro. Life Ins. Co.*, 961 F. Supp. 506, 525 (S.D.N.Y. 1997))).

As discussed *supra*, Plaintiffs have not sufficiently alleged a pattern of racketeering activity, and the Court therefore also dismisses their RICO claim pursuant to 18 U.S.C. § 1962(b).  *See, e.g.*, *Spool*, 520 F.3d at 182, 186 (affirming the district court's dismissal of the plaintiffs' section 1962(b) and 1962(c) claims due to a failure to adequately allege closed- or open-ended continuity); *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 616 (S.D.N.Y. 2015) (dismissing the plaintiffs' section 1962(b) claim because they did not adequately plead any RICO predicates or the existence of either a closed- or open-ended pattern).[11]

### d. Plaintiffs do not sufficiently allege a RICO claim under 18 U.S.C. § 1962(d)

Defendants argue that Plaintiffs' claim alleging a violation of the RICO conspiracy statute must be dismissed, because to state a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff must allege a substantive RICO violation.  (Defs.' Mem. 20.)  Defendants therefore argue that because Plaintiffs do not allege a substantive RICO violation, their conspiracy claims must be dismissed.  (*Id.* at 20–21.)

Plaintiffs argue that because they have properly stated a substantive RICO claim, their conspiracy claim should also survive.  (Pls.' Opp'n 20.)

Under 18 U.S.C. § 1962(d), a person violates the statute if they "conspire to violate any of the" RICO provisions of the statute.  To establish the existence of a RICO conspiracy, a plaintiff must prove 'the existence of an agreement to violate RICO's substantive provisions.'"

---

[11]  Because the Court finds that Plaintiffs have not alleged a pattern of racketeering sufficient to sustain a section 1962(b) RICO claim, it declines to address the question of whether Plaintiffs adequately alleged an "acquisition or maintenance" injury separate from the injury suffered as a result of an alleged predicate act of racketeering.

*Cofacrèdit*, 187 F.3d at 244 (quoting *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997)); *see also Jordan v. Tilzer*, No. 21-1938, 2022 WL 16544335, at *2 (2d Cir. Oct. 31, 2022) (same); *One World, LLC v. Onoufriadis*, No. 21-374, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) (quoting *Williams*, 889 F.3d at 124) (same); *Morin v. Trupin*, 835 F. Supp. 126, 135 (S.D.N.Y. 1993) ("To establish a RICO civil conspiracy claim, the complaint must specifically allege an agreement to commit predicate acts.").  Furthermore, a plaintiff must demonstrate that a defendant "understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses."  *Morin*, 835 F. Supp. at 136 (quoting *Morin v. Trupin*, 747 F. Supp. 1051, 1067 (S.D.N.Y. 1990)); *see also Infinity Health Prods.*, 2012 WL 1427796, at *7 (same).  This requirement may be satisfied by showing that a defendant "possessed knowledge of only the general contours of the conspiracy."  *Gov't Emps. Ins. Co. v. Hollis Med. Care, P.C.*, No. 10-CV-4341, 2011 WL 5507426, at *10 (E.D.N.Y. Nov. 9, 2011) (quoting *United States v. Applins*, 637 F.3d 59, 75 (2d Cir. 2011)).

When a plaintiff relies on the same factual predicate to plead both a substantive RICO violation and conspiracy claim, if the plaintiff fails to adequately plead a substantive RICO claim, plaintiff cannot adequately plead a conspiracy claim.  *See Zamora v. FIT Int'l Grp. Corp.*, 834 F. App'x 622, 626 (2d Cir. 2020) ("Plaintiffs' failure to state a claim for a substantive RICO violation is fatal to their RICO conspiracy claim under § 1962(d), given that [p]laintiffs rely on the same factual predicate to plead both the substantive RICO violation and the conspiracy claim[.]"); *Nygård v. Bacon*, No. 19-CV-1559, 2021 WL 3721347, at *3 (S.D.N.Y. Aug. 20, 2021) ("If a complaint fails to state a substantive RICO claim, it also does not state a claim for RICO conspiracy.").

As discussed *supra*, Plaintiffs have not adequately alleged a substantive RICO claim. Plaintiffs base their conspiracy claim on Defendants' alleged agreement to "engag[e] in those

acts of racketeering as set forth" in Plaintiffs' other RICO claims, and do not assert allegations or events separate from those underlying their substantive RICO claims to support their claim of RICO conspiracy.  (Am. Compl. ¶¶ 114–122.)  Plaintiffs therefore have not pleaded a RICO conspiracy claim.  *See, e.g.*, *Williams*, 889 F.3d at 126 (dismissing the plaintiffs' conspiracy claims because they had not stated a substantive RICO claim); *First Cap. Asset Mgmt.*, 385 F.3d at 182 (same); *Chester Park View, LLC v. Schlesinger*, No. 23-CV-5432, 2024 WL 2785140, at *12 (S.D.N.Y. May 29, 2024) (same); *Paul Hobbs Imps.*, 2023 WL 374120, at *13 (same).

e.  **The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims**

Defendants argue that because Plaintiffs' federal RICO claims should all be dismissed, the Court should decline to exercise jurisdiction over Plaintiffs' remaining state law claims.  (Defs.' Mem. 21.)

Plaintiffs argue that in the event the Court dismisses Plaintiffs' civil RICO claims, the Court should, in its discretion, exercise supplemental jurisdiction over Plaintiffs' state law claims because they are derived from the same nucleus of operative facts as Plaintiffs' civil RICO claims.  (Pls.' Opp'n 21–22.)

Because the Court dismisses Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state law claims of breach of fiduciary duty, fraudulent inducement, common-law unjust enrichment, breach of contract, and tortious interference with contract.  *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction[.]").  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining

29

to exercise jurisdiction over the remaining state-law claims." *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Chinniah v. Fed. Energy Regul. Comm'n*, 62 F.4th 700, 703 (2d Cir. 2023) (same); *One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims[.]").  Accordingly, the Court dismisses Plaintiffs' state law claims without prejudice.

### f.   The Court grants Plaintiffs leave to amend

Plaintiffs argue that, if necessary, the Court should grant them leave to amend the Amended Complaint.  (Pls.' Opp'n 24.)

Defendants request that the Court dismiss Plaintiffs' federal claims with prejudice.  (Defs.' Reply 10.)

The Court grants Plaintiffs' request for leave to file a second amended complaint.  *See, e.g., United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (noting that Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party'" (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008))); *Fraser v. City of New York*, No. 20-CV-5741, 2022 WL 3045524, at *10 (E.D.N.Y. Aug. 1, 2022) (permitting plaintiff leave to file a second amended complaint when "the record d[id] not indicate that she ha[d] repeatedly submitted deficient pleadings"); *see also Meyer v. Seidel*, 89 F.4th 117, 139 (2d Cir. 2023) (noting that

leave to amend should be freely given).  Because leave to amend should be freely given under Rule 15 of the Federal Rules of Civil Procedure, the Court grants Plaintiffs leave to file a second amended complaint.  If Plaintiffs choose to file a second amended complaint repleading their RICO claims, they may also replead their state claims.

### III. Conclusion

For the reasons stated above, the Court grants Defendants' motion to dismiss the Amended Complaint without prejudice as to Plaintiffs' federal claims, declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses them without prejudice, and grants Plaintiffs leave to file a second amended complaint.

Dated: September 3, 2024
        Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge